UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:20-cr-334-WFJ-AAS

MIGUEL ANGEL TUFIÑO PRECIADO

**UNITED STATES' SENTENCING MEMORANDUM**

COMES NOW, the United States of America, by and through the undersigned counsel, and hereby submits this memorandum in opposition to defendant, Tufiño Preciado's objections as to the Base Offense Level and lack of a mitigating role adjustment in his Presentencing Report ("PSR").

**FACTUAL & PROCEDURAL BACKGROUND**

The defendant was charged in a two-count indictment with possession, and conspiracy to possess, with intent to distribute one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501, *et seq*. On February 10, 2021, Mr. Tufiño pleaded guilty to Counts One and Two of the indictment. Doc. 59. During the plea colloquy, defense counsel maintained that defendant was only admitting that the marijuana weighted at least 1000 kilograms while wet. Doc. 61. Mr. Tufiño's pleas were accepted and he was adjudicated guilty of Counts One and Two. Doc. 64.

The following facts are undisputed according to the PSR:

On or about October 26, 2020, a maritime patrol aircraft (MPA) observed a go-fast vessel (GFV) in international waters, approximately 113 nautical miles south of Azuero Peninsula, Panama. The MPA crew observed the persons onboard the GFV jettisoning packages. The Coast Guard Cutter DECISIVE was patrolling in the vicinity, diverted to intercept, and observed the GFV and debris field of packages. The Coast Guard boarding team gained positive control of the GFV and conducted right of approach questioning. Defendant Becerra identified himself as the master of the vessel and claimed Colombian nationality for the vessel. Colombia could not confirm the vessel's nationality, therefore, the GFV was treated as without nationality and therefore subject to U.S. jurisdiction. A search of the vessel and the surrounding debris field yielded 39 bales weighing 1,240 kilograms of a substance that, on field testing, was found to contain marijuana. The DEA later weighed the marijuana ashore and found it to weigh approximately 1,160.5 kilograms. Doc. 86 at ¶¶ 7-10.

The final PSR reflects a base offense level of 30 based on possession and conspiracy to possess with intent to distribute 1,160.5 kilograms of marijuana. Doc. 86 ¶16. After application of special offense characteristics and acceptance of responsibility, the total offense level is 25. *Id.* ¶ 17, 23-5. Accordingly, since the defendant's criminal history category is I, the guideline range for incarceration is 57 to 71 months.

Defendant submitted objections, including objection to not receiving a minor role adjustment, and stating that the government "fails to meet its burden of

establishing the weight of the contraband by substantial and credible evidence." Doc. 86 at p. 18.

## DRUG AMOUNT & BASE OFFENSE LEVEL

Defendant objects to a Base Offense Level 30 and contends that "the government fails to meet its burden of establishing the weight of the contraband by substantial and credible evidence," due to there not being a laboratory report. The defendant has not contested that there were 39 bales and that all the bales contained marijuana, but rather, he is insisting on a laboratory report to confirm the weight of dry contraband without packaging. As explained below, the government can demonstrate that the contraband, without packaging, is 1,000 kilograms or more, such as to meet the requirement for Base Offense Level 30.

"When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Polar,* 369 F.3d 1248, 1255 (11th Cir. 2004). S*ee also*, *United States v. Coleman*, 185 Fed. Appx. 909, 912 (11th Cir. 2006) (affirming reliance on disputed facts in PSR where "probation officer explained that the source of the factual information was law enforcement investigative reports and information received from the case agent."). A sentencing court may consider any information

with sufficient indicia of reliability. *See United States v. Ghertler,* 605 F.3d 1256, 1269 (11th Cir. 2010); *United States v. Giltner,* 889 F.2d 1004, 1007 (11th Cir.1989). *See also,* U.S.S.G. § 6A1.3(a). Thus in fashioning a sentence, the Court can consider "reliable hearsay..., so long as the defendant has the opportunity to rebut the evidence or generally to cast doubt upon its reliability." *United States v. Query,* 928 F.2d 383, 385 (11th Cir.1991) (quotation omitted).

Facts admitted by a defendant at a change of plea hearing may also serve as the basis for establishing drug quantity. *See*, *e.g.*, *United States v. Morales*, 138 Fed. Appx. 208, 209 (11th Cir. 2005) (defendant admitted that factual basis proffered by government was correct). Drug quantity can also be established by testimony from a case agent, even where that testimony relies upon hearsay and other reliable documentation obtained during the course of the investigation. *Id.*

"Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). In the MDLEA context, conservative estimates of drug quantity may be based on multiplying the amount of cocaine in one bale by the total number of bales involved in the offense. *See*, *e.g.*, *United States v. Sanclemente*, 170 Fed. Appx. 686, 689 (11th Cir. 2006) (no error in relying on government's conservative estimate of 600 kilograms where Coast Guard observed the crew of the go-fast boat jettison 30 to 40 bales and retrieved bale contained 20 kilograms of cocaine); *United States v. Mieres-Borges*, 919 F.2d 652, 662 (11th Cir.

4

1990) (drug weight sufficiently established through the following: testimony of DEA agent that lifted 6 or 7 of the 11 bales and found them to weigh at least 5 kilograms each, and evidence of logbook entry from drug storage warehouse listing the weight of the cocaine seized as 275 kilograms); *United States v. Castillo*, 693 Fed. Appx. 868, 869 (11th Cir. 2017) (approximate drug weight determined by multiplying total number of bales by approximate weight of each bale).

In this case, there is sufficient reliable evidence that the defendant possessed and conspired to possess 1,000 kilograms or more of marijuana. First, the defendant is not contesting that all the bales contain marijuana and that there were 39 such bales. He admitted that the drugs weighed 1,240 kilograms when they were weighed at sea (wet, because he and his co-defendants had jettisoned than, and they were recovered from the sea). *See* Doc. 61.

Additionally, the United States is prepared to present photographic, documentary, and testimonial evidence that corroborates the defendant's unequivocal admissions and further establishes the drug weight he should be held accountable for. That evidence will include photographs taken by the Coast Guard and the DEA. Testimonial evidence will show that the marijuana in question was seized from the sea on or about October 26, 2020, and that it was stored abord the cutter until it was transferred on November 2, 2020 to custody of law enforcement in the United States. The marijuana was stored in warehouses until it was processed on December 15, 2020 at the DEA warehouse. Testimonial evidence will establish that DEA agents counted the bales, obtained a representative sample from numerous

bales, and weighted the bales, including packaging, on a calibrated scale used specifically by the DEA for this purpose. The total weight of the bales determined by the DEA was 1,160.5 kilograms. Although such weight included packaging, testimony will establish that such packaging included for each bale one lightweight nylon sack, twine, and garbage bag material wrapped in duct tape, and that, based on knowledge, training and experience, such packaging weighed less than 160.5 kilograms (353 pounds). Testimony will establish that while it is not uncommon for water to enter drug packaging, especially that of marijuana, when packages are jettisoned, such water will typically evaporate when the marijuana is removed from the water, such that the marijuana would be in a usable condition.[1] In this case, the marijuana in question had fifty days in which to "dry out," was not dripping wet when weighed, and would still be able to be used (ingested for psychotropic properties) despite any residual moisture remaining.

The DEA submitted a representative sample to the DEA drug lab, consisting of one brick (tan taped package) and 19 Ziplock baggies each containing samples, all enclosed in a cardboard box. The analyst weighed the entire submission, consisting

---

[1] To determine the weight of the "mixture or substance" containing the controlled substance, courts use a market-oriented approach. *Chapman v. United States*, 500 U.S. 453, 461 (1991). The entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining the defendant's sentence." *Griffith v. United States*, 871 F.3d 1321, 1335 (11th Cir. 2017). Only "unusable parts [that] must be separated and waste products are not to be considered in the calculations." *Id*. It follows that there is no requirement that the DEA or laboratory remove every iota of seawater from the marijuana to determine a "net weight." If the marijuana can be sold or used, then the defendant should be held accountable for its weight.

of the cardboard box with enclosed packaged samples, and obtained a gross weight of 2,046 grams. The analyst then separated the plant matter and weighed it shortly after removing it from the packaging, obtaining a net weight of 1,022 grams. The analyst did not observe any unusual or excessive moisture when removing the plant matter from the packaging or weight it, nor were any processes obtained to remove moisture from the plant matter. Laboratory testing confirmed the presence of marijuana in the representative sample.

In sum, the government has established, by a preponderance of the evidence, a fair, accurate, and conservative drug weight of no less than 1,000 kilograms of marijuana. Accordingly, the United States contends that the PSR correctly calculated the defendant's Base Offense Level at 30, and the defendant's objection should be overruled.

## "MINOR ROLE" ADJUSTMENT

In addition to the issues discussed above, defendant also objects to the PSR's lack of a minor role adjustment. The United States opposes the defendant's request for a minor role adjustment and contends that he has not met his burden to demonstrate his entitlement to such an adjustment.

Under the U.S. Sentencing Guidelines, a defendant may receive a two-level reduction if he was a minor participant in the offense of conviction. U.S.S.G. § 3B1.2. The "minor role" adjustment applies to defendants that are "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A) (emphasis added). In particular, the two-level "minor role" reduction applies

7

to a defendant "who is less culpable than <u>most</u> other participants in the criminal activity." *Id.* § 3B1.2 cmt. n.5. As the proponent of a downward adjustment, the defendant "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999).

In determining whether he has met his burden to demonstrate his entitlement to a "minor role" adjustment, the Court must first measure the defendant's role against the relevant conduct for which he is being held accountable at sentencing. *Id.* at 940. "In other words, the district court must assess whether the defendant is a minor…participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable. *Id.* Consequently, the Court should grant a downward adjustment for "minor role" in the offense "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable-not a minor role in any larger criminal conspiracy." *Id.* at 944.

After conducting the above analysis, the Court may (but is not required to) also measure the defendant's culpability in comparison to that of other participants in the relevant conduct. *Id. See also*, *United States v. Nunez-Gonzales*, 223 F. App'x 924, 926 (11th Cir. 2007) ("Under the *De Varon* analysis, measuring [the defendant's] role

8

against the conduct charged [is] the crucial step, the one that the court "must" take, not, as in the second prong, one that it "may" take). However, the Court should look to other participants "only to the extent that they are identifiable or discernable from the evidence." *Id*. Moreover, the Court may consider "only those participants who were involved in the relevant conduct attributed to the defendant." *Id*. "The conduct of participants in any larger criminal conspiracy is irrelevant." *Id*.

Finally, a defendant is not entitled to a "minor role" adjustment unless and until the Court determines, based on the evidence presented, that "the defendant was less culpable than *most other participants* in [his] relevant conduct." *Id*. This means that a defendant is not entitled to a "minor role" adjustment merely because he is "somewhat less culpable than the other discernable participants." *Id*. Moreover, just because another identifiable participant may be subject to an aggravating role, that does not in itself entitle the defendant to a mitigating role adjustment. *Id*. at 944. ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."). Ultimately, the defendant bears the burden of demonstrating that he is substantially less culpable than the average participant (not the most or least culpable participant). U.S.S.G. § 3B1.2. cmt. n.3(A).

The commentary to USSG § 3B1.2 explains that determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality-of-

9

the-circumstances analysis. *Id.* at n.3(C). The commentary provides the following

non-exhaustive list of factors for consideration:

(i)     the degree to which the defendant understood the scope and
        structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or
        organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making
        authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the
        commission of the criminal activity, including the acts the
        defendant performed and the responsibility and discretion the
        defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the
        criminal activity.

*Id.* "In the drug courier context, the amount of drugs imported is a material

consideration in assessing a defendant's role in [his] relevant conduct." *De Varon*, 175

F. 3d at 945. Other relevant factors in the "drug courier context" include: the fair

market value of drugs, the amount of money to be paid to the courier, and role in the

distribution. *Id.* "[W]hen a drug courier's relevant conduct is limited to her own act

of importation, a district court may legitimately conclude that the courier played an

important or essential role in the importation of those drugs." *Id.* at 942–43.

As a starting point, the amount of drugs involved (over 1000 kilograms of

marijuana), weighs against a minor role adjustment. *United States v. Palma-Meza*, 685

F. App'x 806, 809 (11th Cir. 2017) ("drug quantity remains a valid consideration

when conducting the 'fact-intensive' inquiry into a defendant's role in the offense").

10

Although the defendant did not a have an equity interest in the marijuana, he certainly had an enormous financial stake in the success of the smuggling operation. After all, he was offered $5,000 USD for his participation in this smuggling venture. To put that in perspective, the defendant stood to make nearly as much money for one smuggling operation as he typically makes in a year of work as a fisherman.[2]

Additionally, it is undisputed that defendant was one of three people hired to transport over a ton of marijuana. Were this operation successful, the defendant would have transported this marijuana several hundred, if not thousands of miles, through the ocean over the course of several days to over a week. Simply put, in a high-level smuggling operation such as this, there are zero non-essential personnel. Everyone has a job to do, and his or her participation is central to the success of the smuggling operation.

Nevertheless, the defendant maintains that he is not only eligible for a consideration for a minor role adjustment but that he is entitled to such an adjustment. While we agree that the defendant is not *per se* excluded from consideration for a minor role adjustment, the United States submits that the defendant still bears the burden to demonstrate that he is substantially less culpable than the average participants who are identifiable and discernable based on the evidence. USSG § 3B1.2; *Rodriguez De Varon*, 175 F.3d at 944.

---

[2] The defendant claims that prior to his arrest, he made approximately $100 USD per week in a fishing plant.

Turning then to the *De Varon* framework, the defendant has not and cannot demonstrate that he was "a minor…participant in relation to the relevant conduct attributed to [him] in calculating [his] base offense level." *Id.* at 941. His actual conduct is identical to his relevant conduct (*i.e.* transporting over 1000 kilograms of marijuana onboard a go-fast vessel). Because "the relevant conduct attributed to [the] defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable. *Id.* In the MDLEA context, the Eleventh Circuit has repeatedly and consistently held, under virtually identical facts, that where a go-fast vessel crewmember is sentenced using only the amount of drugs found on the vessel, he does not have a minor role compared to his relevant conduct because his actual conduct is identical to his relevant conduct. *See United States v. Herrera-Villarreal*, 665 F. App'x 762, 764 (11th Cir. 2016); *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017); *United States v. Pico-Mocera*, 740 F. App'x 969, 972 (11th Cir. 2018). Accordingly, the defendant has not and cannot demonstrate his entitled to a minor role adjustment under the first prong of the *De Varon* framework.

Nevertheless, the defendant invites the Court to exercise its discretion to also measure the defendant's relative culpability to other persons involved in the relevant conduct for which defendant is being held accountable. The defendant's arguments are virtually indistinguishable from those considered and rejected by the Eleventh Circuit in recent MDLEA cases. In *Herrera-Villarreal*, 665 F. App'x at 764–65, the

12

Eleventh Circuit upheld denial of a minor role adjustment where the defendant (who was a mechanic onboard a go-fast smuggling vessel) "presented no evidence to demonstrate that he was less culpable than the other crewmembers, who were the only other identifiable participants in his relevant conduct." More recently, the Eleventh Circuit upheld denial of a minor role adjustment where the defendant "failed to prove that he had a lesser role than either of the two other occupants of the go-fast vessel." *United States v. Pico-Mocera*, 740 F. App'x 969, 972–73 (11th Cir. 2018). Even if the defendant was a "mere mariner" onboard this smuggling vessel, that in itself is insufficient to establish entitlement to a minor role adjustment since "his role in the criminal activity was largely similar" to the other crewmember and he was "in a position to do most of the duties on board the vessel[,]" including "[taking] turns driving the vessel and changing the fuel lines." *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017) (upholding denial of minor role even though appellant was a mariner and had less responsibility than the captain and load guard).

13

**CONCLUSION**

WHEREFORE, for the reasons set forth above, the United States respectfully

requests that this Honorable Court overrule the defendant's objections as to the Base

Offense Level and mitigating role adjustment.

> Respectfully submitted,
>
> KARIN HOPPMAN,
> Acting United States Attorney
>
>
> By: */s/ Tereza Zambrano Ohley*
>    Tereza Zambrano Ohley
>    Special Assistant United States Attorney
>    Florida Bar No. 0060407
>    400 N. Tampa Street, Suite 3200
>    Tampa, Florida 33602-4798
>    Telephone: (813) 274-6000
>    Facsimile: (813) 274-6358
>    E-mail: Tereza.Ohley@usdoj.gov

14

**U.S. v. Tufino Preciado**                    **Case No. 8:20-cr-334-T-WFJ-AAS**

### CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2021, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

Lori Palmieri, Esquire

*/s/ Tereza Zambrano Ohley*
Tereza Zambrano Ohley
Special Assistant United States Attorney
Florida Bar No. 0060407
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:     (813) 274-6000
Facsimile:     (813) 274-6358
E-mail: Tereza.Ohley@usdoj.gov

15